were made, and which they had no right to.   We cannot see anything in the defendant's evidence which destroys the effect of the previous decision in this case, or furnishes any reason why that decision should not have been followed by the learned justice at the trial now under review.

We are not favored with any statement of the reason why the learned justice below made the rulings which he did.   It was probably in his mind that the evidence of the defendant entirely disproved the fact that this was a riotous mob or assemblage, within the meaning of the statute.   .To that there are two answers.   In the first place, as upon this motion the evidence must be construed most favorably to the plaintiff, the ruling of this court upon the former appeal, that there was sufficient evidence to warrant the finding that the case was within the statute, still remains the law, and should be followed.   In the second place, taking all the evidence together, it necessarily appears that there was a disputed question of fact. Whatever may have been supposed to be the power of a trial court to nonsuit where the evidence so strongly predominates as to require it to set aside a verdict for the plaintiff if recovered, as has undoubtedly been the law of this state from the earliest time down to a very recent period (Stuart v. Simpson, 1 Wend. 376; Rudd v. Davis, 3 Hill, 287; Id., 7 Hill, 529; Hemmens v. Nelson, 138 N. Y. 517, 529, 34 N. E. 342; Laidlaw v. Sage, 158 N. Y. 73–96, 52 N. E. 679), it must now for the present be taken to be the law that no such power exists, and that whenever there is a disputed question of fact the case must go to the jury, although it is understood that a verdict for the plaintiff will not be permitted to stand (Fealy v. Bull, 163 N. Y. 397, 57 N. E. 631; McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282).   Following that recently established rule, we are bound to hold in this case that, as this court has previously held that there was sufficient evidence to send the case to the jury, the trial court was bound so to do, however great may have been the weight of the testimony introduced by the defendant to answer the plaintiff's contention.

The verdict must therefore be set aside, and a new trial granted, with costs to the appellant to abide the result of the action.

McLENNAN, J., concurs.   SPRING, J., concurs in result.   WILLIAMS, J., dissents.

ADAMS, P. J.   I concur in the foregoing opinion, in deference to the former decision in this court, which, until the same shall be reversed, must be regarded as conclusive.

(64 App. Div. 95.)

FIDDLER v. NEW YORK CENT. & H. R. R. CO.

(Supreme Court, Appellate Division, Fourth Department.   July 23, 1901.)

RAILROADS—ACCIDENT AT CROSSING—CONTRIBUTORY NEGLIGENCE.

   Plaintiff, with perfect eyesight and hearing, was injured while attempting to cross defendant's double track just at daylight by being struck by an east-bound train on the southern track.   A west-bound freight train had just gone by on the northern track, and plaintiff

waited until the rear end of such train had passed about 40 feet beyond the crossing before starting across. When he reached the southern track his view thereof was unobstructed for two miles to the west, and he testified that he knew the train was due, and was looking for it, but did not see it. The engine had a lighted headlight, and there was nothing to distract the plaintiff's attention. *Held*, that a nonsuit for contributory negligence was properly ordered.

Adams, P. J., dissenting.

Appeal from trial term, Onondaga county.

Action by Thomas Fiddler against the New York Central & Hudson River Railroad Company. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

The action was begun on the 1st day of June, 1899, to recover damages for injuries sustained by the plaintiff on the 19th day of February, 1898, while walking south on a highway near the village of Weedsport, in the county of Cayuga, N. Y., and in attempting to cross defendant's double-track railroad, which extends east and west, and is crossed by said highway at substantially a right angle, by being run over by an engine drawing a train approaching said crossing from the west on the southerly track, alleged to have been caused through the negligence of the defendant, and without any negligence on the part of the plaintiff.

Argued before ADAMS, P. J., and McLENNAN, SPRING, WILLIAMS, and RUMSEY, JJ.

Henry E. Miller, for appellant.
Frank Hiscock, for respondent.

McLENNAN, J. There is no conflict in the evidence in this case, and, the court having directed a verdict for the defendant, "the plaintiff is entitled to the most favorable inferences deducible from the evidence, and all disputed facts are to be treated as established in his favor." McDonald v. Railway Co., 167 N. Y. 66, 68, 60 N. E. 282, 283; Bank v. Weston, 159 N. Y. 201–208, 54 N. E. 40. If the evidence thus interpreted presents a question of fact, tends to establish negligence on the part of the defendant, and freedom from contributory negligence on the plaintiff's part, the injury having been proven, the judgment must be reversed, even if the evidence was of such a character that the learned justice presiding at the trial would have been required to set aside the verdict as being against the weight of evidence, if one had been rendered in plaintiff's favor by the jury. McDonald v. Railway Co., supra. If, however, the evidence was not sufficient to raise such an issue, or did not tend to establish those two propositions, then the nonsuit was right, and the judgment should be affirmed.

It is elementary that a traveler upon a highway, who, while attempting to cross the tracks of a steam-railroad company, sustains injury by being struck or run over at such crossing by its locomotive or cars because of its negligence, must, in order to entitle him to recover from the railroad company the damages sustained, prove that he used ordinary care and prudence to avoid such injury, and that his conduct was such as to relieve him from the charge of contributory negligence. In defining the duty of a traveler under such circumstances, the court of appeals, in a case recently decided, re-

iterated the rule which has been in force ever since the organization of the court, and said:

"The law requires a traveler on a highway, before crossing a railroad track, to look and listen for the approach of trains; and if he omits to do so, and suffers injury, he cannot maintain an action against the railroad company, although it was guilty of negligence." Tucker v. Railroad Co., 124 N. Y. 308, 26 N. E. 916.

In the case at bar there was proof tending to show that the bell or whistle upon the locomotive which came in collision with the plaintiff was not rung or sounded as it approached the crossing, and thus tended to establish defendant's negligence, and made it a question of fact for the jury. So that we need only inquire whether or not there was any evidence which tended to prove plaintiff's freedom from contributory negligence, and such as to require the submission of that question to the jury, within the rule laid down by the courts of this state. The testimony bearing upon that proposition, so far as material, may be briefly summarized as follows: The plaintiff, who was 38 years of age, in good health and strength, his eyesight and hearing being in perfect condition, and in the full possession of all his faculties, on the morning in question, just as it was breaking day, approaching on the highway from the north, walked to a point 10 feet distant from the northerly rail of defendant's double-track railroad, on the northerly track of which a freight train was going west. He waited at that point until the hind end of such freight train, which he swears he saw and was in plain sight, reached a point 30 or 40 feet west of the highway on which he was standing. Between him and the hind end of such moving train, which he says he plainly saw, and of the southerly track, there was absolutely nothing to obstruct his view. He then walked southerly, his line of vision to the west constantly increasing, until when he reached the northerly track his view to the west was entirely unobstructed for a distance of 2 miles, which view continued absolutely unobstructed while he walked across the northerly track, the distance between the two tracks, and onto the southerly track, where he was struck by the engine of a train approaching on such southerly track from the west, and upon which engine a headlight was lighted and burning, and received the injuries for which he seeks to recover in this action. The plaintiff had in mind that the train from the west was due, and was watching for it. There was nothing to distract his attention. There was no storm which could interfere with his seeing the train, there being only three or four inches of snow on the ground; and at the time it was snowing "just a little," and "the wind was blowing a little from the southeast." There was no smoke, no unusual noise, no other train to the east, no confusion of lights. After he reached the north rail of the northerly track, which was at least 12 feet from the north rail of the southerly track, where the collision occurred, his view to the west was absolutely unobstructed for a distance of two miles; and the approaching engine, with its headlight burning, was in full and plain view from the crossing while it traversed that entire distance. The plaintiff testified that while standing at the point ten feet north of the north rail of the

northerly track, and while traversing the distance between there and the southerly track, where he was struck, he looked to the west to see the approaching train, which he was expecting, but that he did not see it, and did not know that the train approaching from the west was there or in that vicinity until it struck him.

This is all the evidence given on the part of the plaintiff tending to establish freedom from contributory negligence, and the precise question presented by this appeal is, does the plaintiff's sworn statement that he looked for, but did not see, the approaching train, under the circumstances of this case, raise an issue of fact, or furnish any evidence upon which a finding of freedom from negligence might be found? There must be cases where mere words, even if spoken under oath upon the witness stand, do not raise an issue of fact as to their verity. Suppose a person who was injured at a railroad crossing in the city of Albany in the month of August should testify upon the trial of an action brought against a railroad company to recover for such injuries that he looked for the approaching train which struck him, but was unable to see it because a snow bank 50 feet high was alongside of the railroad track, and obstructed his view of the train. Would the trial justice presiding in such a case be required to gravely submit to the jury the question as to whether or not a snow bank in fact obstructed the plaintiff's view, as claimed by him? If it should appear that the Empire State Express was approaching a highway crossing in broad daylight at the rate of 60 miles an hour, the view of the entire train from the highway being absolutely unobstructed for the entire distance of 5 miles before reaching the crossing, would the testimony of a traveler upon the highway, given in an action brought by him to recover damages for being run over by such train, to the effect that he looked diligently to see the approaching train, which he was expecting, and that he looked exactly where the train was, but that he did not see it, although his eyesight was perfect, and without any explanation as to why he did not see it, be sufficient to raise an issue of fact, as to whether or not he had discharged the duty imposed upon a traveler approaching a railroad crossing? Again, if a train of cars should be negligently left standing entirely across a highway, and a pedestrian, with perfect eyesight, in broad daylight, with nothing to distract his attention, should walk against it and bump his head, would the question of his contributory negligence be one of fact for the jury, in case he should testify that he expected the train was there, that he had it in mind, and that he looked for it, but did not see it, without in any manner explaining why he failed to discover it? If not, then quite as clearly not in the case at bar. The train in question was in plain sight of the plaintiff for such length of time as gave him ample opportunity to see it, and to have avoided collision with it; and it cannot be of importance that the train was in plain sight at one side, rather than directly in front, of him. The plaintiff's testimony that he looked, but did not see the train, is "in such contradiction of matters of common knowledge and the laws of nature as to be incredible, as matter of law." In re Harriot's Estate, 145 N. Y. 540, 40 N. E. 246. And therefore it presented no question

for the determination of the jury. Any other ruling applied to the facts of this case would lead to results most unfortunate in the administration of justice. If it shall be held that every statement of a witness or interested party made upon the trial of an action, no matter how inconsistent or absurd, and even if in conflict with common knowledge or with the laws of nature, may be made the basis of a recovery in an action, and must be left to the determination of a jury, there will be left hardly any means which will afford protection to a large class of litigants,—especially those against whom there may be popular prejudice,—and rank injustice in many cases will almost necessarily result. We think such a rule has not received the sanction of the court of appeals in this state, but, on the contrary, that that court has consistently and uniformly held, almost since its organization, that, in order to warrant the trial court in submitting a question to the jury, there must be some evidence that ought reasonably to satisfy a jury that the fact sought to be proved is established. In Pollock v. Pollock, 71 N. Y. 137, where the chief question discussed was whether or not a finding of fact by a referee was supported by evidence, the finding was reversed, and the court said (Judge Folger writing the opinion,—page 153), "Insufficient evidence is no evidence;" and the learned judge quoted with approval the language of Maule, J., in Jewell v. Parr, 13 C. B. 916, E. C. L. 76, as follows:

"When we say there is no evidence to go to a jury, we do not mean literally none, but there is none that ought reasonably to satisfy a jury that the fact sought to be proved is established."

The language of Judge Folger, and the language of Maule, J., quoted by him, was also quoted with approval by Cullen, J., in Fealey v. Bull, 163 N. Y. 397–402, 57 N. E. 631.

In Re Harriot's Estate, supra, the question under consideration was whether or not the finding of a surrogate that appraisers were entitled to $250 each for their services, being $5 a day for 50 days, which finding was based upon their testimony that they spent 50 days in doing the work charged for, was supported by sufficient evidence to sustain such finding. The court said, per Haight, J.:

"As we have seen, the inventory was prepared by others. The only thing left for the appraisers to do was to examine the furniture, and compare it with the lists made; examine the securities entered in the inventory, and attach thereto the values, which could have been ascertained in a day's time in any stockbroker's office in the city of New York. Upon these undisputed facts, we cannot sustain the finding that the appraisers were actually and necessarily occupied fifty days in making their inventory."

And the court further said in that case:

"Should a person affirm that black was white or white was black, or, being in the full possession of his faculties, and having the unrestricted use of his limbs, should testify that he actually and necessarily occupied a year in walking a mile, his statement would be so in conflict with recognized possibilities as to entitle it to no credit or character as evidence."

If the learned judge in his illustration had referred to the recognized possibilities of eyes instead of legs, it would have exactly fitted the case at bar. In the Harriot Case the claimants testified that they were actually occupied 50 days in doing the work charged

for; but the amount of work being conceded, and it being within common experience and knowledge that such work could all have been done in a day or two, their evidence that such work took 50 days was held to be no evidence, and not sufficient upon which to base a finding of fact. So, in the case at bar, it being within the experience and common knowledge of men that a person with good eyesight, when his attention was called to a particular object in plain view, must have seen it if he had looked, we think the evidence of the plaintiff, unexplained, that he did look, but did not see the train, was not sufficient to raise a question of fact, or such as to require its submission to a jury.

In Hudson v. Railroad Co., 145 N. Y. 408, 40 N. E. 8, the question at issue was whether or not the crown sheet of a boiler collapsed, which concededly was caused by being scorched, when covered with six inches of water. The engineer testified that it did, the jury by their verdict found the fact to be so, and judgment for the plaintiff was entered thereon. The court of appeals, however, reversed the judgment, holding that there was no evidence to support the finding, because that given by the engineer was in conflict with well-recognized and well-known scientific facts, about which there is no conflict, and that a nonsuit should have been granted. The court said at page 412, 145 N. Y., and page 9, 40 N. E.:

"All questions as to the weight of evidence are final with the general term, and this court has no power to review the determination of that court with reference thereto. But where the evidence which appears to be in conflict is nothing more than a mere scintilla, or where it is met by well-known and recognized scientific facts, about which there is no conflict, this court will still exercise jurisdiction to review and reverse if justice requires."

In Bagley v. Bowe, 105 N. Y. 171, 11 N. E. 386, at page 179, 105 N. Y., and page 389, 11 N. E., substantially the same rule is reiterated. Judge Andrews, in writing the opinion of the court in that case, said:

"The question whether the judge was authorized to take from the jury the question of fraudulent intent, arising upon the extrinsic facts, is to be determined in view of the settled rule that, to justify the court in directing a verdict in any case upon the facts, the evidence must be undisputed, or so certain and convincing that no reasonable mind could come to but one conclusion. If there is ground for opposite inferences, and a conclusion either way would not shock the sense of a reasonable man, then the case is for the jury, although the judge may entertain a clear and decided conviction that the truth is on this or that side of the controversy."

We think the case at bar falls clearly within the exception pointed out by the learned jurist, to wit, that the statement of the plaintiff that he looked at the approaching engine, which was in plain view, expecting to see it, but that he did not see it, although his eyesight was good, would shock the sense of a reasonable man, and that no reasonable man could come to but one conclusion, to wit, either that he did not look, or that he did look and did see the approaching train.

Substantially all the cases to which we have thus far called attention are referred to in the opinion of the court in Fealey v. Bull, supra, and, as we understand it, the doctrine of those cases was fully

approved. In concluding the discussion of the question, Judge Cullen, at page 402, 163 N. Y., and page 632, 57 N. E., says:

"There must be not only some evidence, but the evidence must be sufficient in its nature to warrant the court in submitting a cause to the jury. In nearly all the cases where it has been held that a scintilla of evidence was not sufficient to uphold the verdict, the proof has been a matter of inference. But the rule also applies to cases of direct evidence. The testimony of a witness may be in such contradiction of matters of common knowledge or with the laws of nature as to be incredible, as a matter of law. In re Harriot's Estate, 145 N. Y. 540, 40 N. E. 246. A witness may be so discredited by his own confession that his uncorroborated testimony is insufficient in law to justify a verdict. We do not assume to enumerate all the cases where a verdict or a nonsuit should be properly directed. Where, however, the right to a verdict depends on the credibility to be accorded witnesses, and the testimony is not incredible or insufficient as a matter of law, the question of fact is for the jury to determine."

If this language, which was so recently approved by a unanimous court, is to be given its ordinary significance and meaning, we must conclude that the learned court considered that, although there may be some evidence of a fact, it is not necessary in all cases that such evidence should be passed upon by a jury, and that it is not necessary unless the evidence "be sufficient in its nature to warrant the court in submitting a cause to the jury." We think it is clearly held by the language quoted that the sufficiency of the evidence—and we must assume the court was speaking of legal and material evidence—in some cases, at least, is to be determined by the trial court.

In McDonald v. Railway Co., supra, which is the latest case, so far as we know, where the question at issue has been discussed by the court of appeals, the case of Fealey v. Bull, supra, is cited with approval; and, as we understand the decision in the McDonald Case, it is not in conflict with any of the cases referred to, or with any of the prior decisions of the learned court upon the precise question here involved. In that case the court, per Martin, J., says:

"So long as a question of fact exists, it is for the jury, and not for the court. If the evidence is insufficient, or if that which has been introduced is conclusively answered, so that, as matter of law, no question of credibility or issue of fact remains, then, the question being one of law, it is the duty of the court to determine it."

. The meaning of the language cannot be in doubt. In speaking of evidence the learned judge must have referred to legal and material evidence, and precisely the same meaning would have been conveyed if the court had said that if legal and material evidence offered upon a trial to prove a particular fact is insufficient, or if that which has been introduced has been so conclusively answered by other legal and material evidence, so that, as matter of law, no question of credibility or issue of fact remains, then it is the duty of the court to determine it. To determine what? Clearly, as to the insufficiency of evidence, and as to whether or not that which has been introduced has been conclusively answered. And the court further says:

"The credibility of witnesses, the effect and weight of conflicting and contradictory testimony, are all questions of fact and not questions of law."

Thus interpreted, the decision is in complete harmony with the prior decisions of the court which hold that, where the evidence is

not sufficient to warrant a verdict for the plaintiff, it is the duty of the trial judge to decide the question as one of law. Certainly, so interpreted, the case cannot be regarded as authority for the proposition that a trial judge must ask a jury to determine a proposition which is conclusively settled by the experience and common knowledge of men, or which is established by the laws of nature, simply because some witness has given testimony in conflict therewith. We think it is not the law that an issue of fact would be raised as to the color of the sun or of the moon, even if a witness should testify that one was black and the other green, or, in the case at bar, that an issue of fact was raised, as to whether or not the plaintiff looked to see the approaching train, because he testified that he did, but did not see it, when concededly his eyesight was good, the train was in plain view, and he had it in mind and was looking for its approach. Substantially the same rule is laid down in both the McDonald and Fealey Cases. In the Fealey Case, at page 403, 163 N. Y., and page 632, 57 N. E., it is stated as follows:

"Where, however, the right to a verdict depends on the credibility to be accorded witnesses, and the testimony is not incredible or insufficient as a matter of law, the question of fact is for the jury to determine."

Under that rule, it is clear that if one witness should testify to a fact, and a dozen or fifty witnesses should testify to the contrary, it would be for the jury to determine where the truth of the matter was, and the determination of such fact by the court would be error. So, too, where a witness or interested party gives evidence of a material fact, and it appears that the witness is discredited by reason of having sworn to a contrary state of facts upon a prior trial or trials, the credibility of such witness is for the jury, and it must determine whether the fact is as then stated by the witness, or as previously stated by him. Williams v. Railroad Co., 155 N. Y. 158, 49 N. E. 672. If the plaintiff in the case at bar had testified that there was a growth of underbrush at the side of the highway, which obstructed his view of the approaching train, and prevented him from seeing it, it would have been the duty of the trial judge to have submitted such question to the jury, even if forty other witnesses had sworn that no underbrush was there, and equally so if it had been shown that plaintiff's reputation for truth and veracity was bad, or that he had given testimony upon a previous occasion which was in conflict with the testimony given by him upon the trial. This would be so under the rule above referred to, because the testimony of the plaintiff so given would not have been inherently incredible, and in contradiction of matters of common knowledge or the laws of nature, and so as to be incredible or insufficient as a matter of law.

Since the decision of the McDonald Case, it seems to have been generally understood by the profession that the rule laid down in Linkhauf v. Lombard, 137 N. Y. 417, 33 N. E. 472, and in Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342, has been repudiated or overruled. Such does not seem to have been the intention or understanding of the learned court of appeals. In the McDonald Case, Judge Martin, in speaking of those cases, says:

"The learned judge who delivered the opinion in that case [Fealey v. Bull] plainly demonstrated that the doctrine enunciated by the court below has

no actual support in Linkhauf v. Lombard, 137 N. Y. 417, 33 N. E. 472, and Hemmens v. Nelson, 138 N. Y. 517, 34 N. E. 342. He shows that in those cases there was no sufficient evidence to sustain the verdicts, and that, if there had been, this court would have had no jurisdiction to reverse. His examination further discloses that the reversal in the Linkhauf Case was upon the ground that the proof amounted, at most, to a mere surmise, and that in the Hemmens Case the principle that, if there is any evidence upon a question of fact, it should be submitted to the jury, was asserted. The clearness and ability with which the question was discussed by him render it unnecessary to further consider it at this time."

In Fealey v. Bull, supra, Judge Cullen said at page 402, 163 N. Y., and page 632, 57 N. E.:

"Even a casual reading of the opinion in the Linkhauf Case shows that it is but an authority for the doctrine that, as to the submission of a cause to the jury, the question is not whether there is any evidence to make out a case of liability, but whether there is sufficient evidence to establish that fact; and evidence which rests in mere surmise or speculation is insufficient to present an issue, as against the positive evidence of a defendant, or the reasonable and legal inference from facts conceded or established upon the trial. In that case it is said, referring to the evidence: 'At most, it was only open to a surmise that the defendants were individually concerned in running this steamship line, and that was not enough to justify the trial judge in letting the case go to the jury. To permit a jury to speculate and surmise upon a question of responsibility is to withdraw from the litigant a safeguard intended for the protection of his rights.' So, also, in the Hemmens Case, referring to a question of fact in the case, the opinion says: 'Still, however improbable it may appear, if there was any evidence the question was doubtless for the jury.' The doctrine of both cases is the same. There must be not only some evidence, but the evidence must be sufficient in its nature to warrant the court in submitting a cause to the jury."

And then the learned judge proceeds as before quoted.

But assuming that it is now definitely settled by the decision in the McDonald Case that, "so long as a question of fact exists, it is for the jury, and not for the court. * * * The credibility of witnesses, the effect and weight of conflicting and contradictory testimony, are all questions of fact, and not questions of law. If a court of review, having power to examine the facts, is dissatisfied with a verdict because against the weight or preponderance of evidence, it may be set aside; but a new trial must be granted before another jury, so that the issue of fact may be ultimately determined by the tribunal to which those questions are confided,"—it by no means follows that the rule laid down by a unanimous court in Fealey v. Bull only eight months before has been abrogated, and that it is now the law that the verity of every statement of a witness, if in form it tends to establish a material issue, must be submitted to a jury for its determination, no matter if such statement be opposed to all experience, common knowledge, the laws of nature and of scientific facts. We think at least the doctrine stated by Judge Cullen in Fealey v. Bull, supra, and which is but a reiteration of the rule which has prevailed for more than 50 years, is still in force, to wit, that "there must be not only some evidence, but the evidence must be sufficient in its nature to warrant the court in submitting a cause to the jury," and that "the testimony of a witness may be in such contradiction of matters of common knowledge and the laws of nature as to be incredible as matter of law," and that whether the evidence is

"sufficient in its nature," or so in "contradiction," must be determined by the court. We think the case at bar falls within the rule thus laid down, and the conclusion is reached that the evidence in this case, offered for the purpose of establishing freedom from contributory negligence, was of a character which did not make that question an issue of fact, and that therefore the learned trial justice was right in granting defendant's motion for a nonsuit. It follows that the judgment appealed from should be affirmed, with costs.

Judgment affirmed, with costs.

SPRING and RUMSEY, JJ., concur. WILLIAMS, J., concurs in result.

ADAMS, P. J. (dissenting). This court has recently held that a recovery is not impossible because it can be shown that a traveler upon a highway ought to have discovered an approaching train in time to have avoided coming into collision with it if he had been upon the lookout for it. Seeley v. Railroad Co., 8 App. Div. 402, 40 N. Y. Supp. 866. And this decision was followed with approval in Turell v. Railroad Co., 49 App. Div. 94, 63 N. Y. Supp. 402. In the prevailing opinion it is said that the plaintiff must have seen the train which struck him, if he looked at the time and in the direction testified to by him. This assertion is no more true of this than of many other cases in which verdicts on behalf of the plaintiff have been upheld. The case of Zwack v. Railroad Co., 160 N. Y. 362, 54 N. E. 785, is one in which the undisputed evidence seemed to make it perfectly clear that the locomotive which struck the plaintiff must have been seen by any one looking in the direction from which it was approaching, and in considering this feature of that case the court of appeals said:

"But it may be asked, if he [the plaintiff] looked towards the east at all, why did he not see the coming train and avoid it? That question may be asked, and generally is, in every case of this character. It is an argument to be addressed to the jury, and not to a court dealing with questions of law only."

So, also, in the case of Greany v. Railroad Co., 101 N. Y. 419, 5 N. E. 425, which in its main features is not unlike the one now under consideration, it was said by Danforth, J., that he knew of "no exception to the doctrine that where there is any evidence, direct or inferential, of care or caution on the part of the person injured, the question whether it was in compliance with that rule [that a party is only bound to make all reasonable efforts to see that a careful, prudent man would make in like circumstances] is for the jury." To my mind, it is not so clear that the plaintiff must necessarily have seen the approaching train, if he took the precautions he declares that he did. The accident, it must be remembered, occurred early in the morning of February 19, 1898, while it was yet dark, and at a time when it was snowing. When the plaintiff was 8 or 10 feet from the north track a freight train passed west upon that track, with lights upon the rear end. This train was between the plaintiff and the one coming from the west on the next track south. When the

caboose of this freight train was 40 or 50 feet west of the plaintiff, he looked and listened, but, neither seeing nor hearing the approach of the train from the west, he stepped upon the second track and was struck. These circumstances are singularly like those of another case with which this court not long since had to deal, in which it was held that the question of contributory negligence was for the jury, and this view was subsequently affirmed by the court of appeals. Pruey v. Railroad Co., 41 App. Div. 158, 58 N. Y. Supp. 797, affirmed in 166 N. Y. 616, 59 N. E. 1129. In both the Zwack and Pruey Cases it seemed to me that the evidence of contributory negligence was too clear to admit of that question being submitted to the jury; but, having been admonished that my position in those cases was untenable, I do not see how it is possible to sustain the decision of the trial court in this case, in which the evidence of contributory negligence is certainly no more convincing than that in the cases referred to, without disregarding the rule established by the court of last resort,— that in cases of this character the argument of "incredibility" is one "to be addressed to the jury, and not to a court dealing with questions of law only." Zwack v. Railroad Co., supra; McDonald v. Railway Co., 167 N. Y. 66, 60 N. E. 282. I am, therefore, constrained to dissent from the prevailing opinion in this case.